The undersigned have reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner John Hedrick. The appealing party has not shown good ground to reconsider the evidence; receive further evidence; rehear the parties or their representatives; or amend the Opinion and Award.
* * * * * * * * * * *
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties at the hearing as:
STIPULATIONS
1. On the date of plaintiff's injury, the parties were subject to and bound by the provisions of the North Carolina Workers' Compensation Act.
2. On that date, an employment relationship existed between plaintiff and defendant-employer.
3. Aetna Life and Casualty Company was the workers' compensation insurance carrier on the risk.
4. On 1 October 1990, plaintiff sustained an injury by accident arising out of and in the course of her employment with defendant-employer.
5. Plaintiff's average weekly wage was $400.00, which yields a compensation rate of $266.68.
6. As a result of her injury, plaintiff became disabled on 5 June 1991 and received temporary total disability compensation from that date until 5 April 1994.
7. A set of exhibits, including plaintiff's medical records and the parties' discovery responses, attached to the parties' Pre-Trial Agreement and identified as Exhibits A-K, are admitted into evidence.
8. Clinic notes from Helen Johnson Rogers, Ph.D, received by the Industrial Commission on 29 February 1996 and marked as Defendants' Exhibit A, are admitted into evidence.
9. A set of plaintiff's medical records consisting of seventy-eight pages and marked as Defendants' Exhibit B, are admitted into evidence.
10. The pre-hearing depositions of Helen Johnson Rogers, Ph.D., Kevin Paul Speer, M.D., Alan Finkel, M.D., and William A. Somers, M.D. are admitted into evidence.
11. The undersigned takes judicial notice of the Industrial Commission's 3 May 1994 approval of defendants' Industrial Commission Form 24, Application of Employer or Insurance Carrier to Stop Payment of Compensation.
* * * * * * * * * * *
The Full Commission adopts the findings of fact found by the Deputy Commissioner as follows:
FINDINGS OF FACT
1. At the time of the hearing, plaintiff resided in Durham, North Carolina. She had two step-children and one natural child. Plaintiff completed the eleventh grade of high school and later obtained her GED. Other than her employment with defendant-employer, plaintiff's work history consisted primarily of employment as a hair dresser.
2. Defendant-employer was a retail consumer goods business. Plaintiff began her employment with defendant-employer in 1987 as a sales clerk. She was later promoted to a supervisory position and eventually to the position of store manager. As store manager, plaintiff opened and closed the store, ordered and maintained inventory and stocked merchandise. Plaintiff was also responsible for hiring, discharging and supervising employees.
3. On 1 October 1990, plaintiff was retrieving a box of men's shirts from an overhead shelf when the box fell and struck her left shoulder. As a result of this incident, plaintiff experienced pain in her left shoulder, left arm and neck. On 11 October 1990, plaintiff presented to Dr. Somers who prescribed physical therapy. Plaintiff participated in the prescribed physical therapy without improvement. Likewise, injections into plaintiff's left shoulder did not improve her condition.
4. On 5 June 1991, plaintiff underwent left shoulder surgery during which Dr. Somers performed a subacromial decompression and a labral defect repair. Following surgery, plaintiff returned to physical therapy. Plaintiff's therapy improved her shoulder strength and range of motion, but she continued having left shoulder, arm and neck pain.
5. On 7 November 1991, Dr. Somers referred plaintiff to Dr. Finkel to evaluate whether plaintiff's pain was related to stress or anxiety. While receiving treatment from Dr. Finkel for her pain, plaintiff was referred to Dr. Mallon, an orthopaedic surgeon specializing in shoulder injuries.
6. In March 1992, plaintiff underwent an open surgery on her left shoulder to repair and tighten tissue in the front of plaintiff's shoulder. Following surgery, plaintiff's pain continued. Dr. Somers prescribed medication and continued physical therapy which failed to alleviate plaintiff's pain.
7. As a result of injury on 1 October 1990, the subsequent surgeries and her persistent shoulder pain, plaintiff became depressed. Plaintiff's depression preceded numerous other stressful events in her life, including an unplanned pregnancy in the spring on 1992, an automobile collision in June 1992 and the subsequent birth of her child by Cesarean section.
8. On 23 July 1993, plaintiff had a grand mal seizure. The seizure was caused by Wellbutrin, an antidepressant medication prescribed for her by Dr. Finkel. Plaintiff was predisposed to seizure as a result of a myelogram performed on 22 July 1993. As a result of the seizure, plaintiff was hospitalized for three days. The seizure caused plaintiff to experience cognitive dysfunction and memory loss.
9. On 10 August 1993, plaintiff presented to Dr. Rogers for evaluation of her cognitive function and depression. The symptoms of plaintiff's depression included irritability, loss of concentration, decreased motivation and sleep loss. Dr. Rogers treated plaintiff for depression and anxiety. Dr. Rogers' treatment of plaintiff's depression and anxiety lessened the severity and frequency of those conditions.
10. Pursuant to a referral by Dr. Somers, plaintiff presented to Dr. Speer on 10 November 1993. Thereafter, Dr. Speer performed a bone scan and a diagnostic arthroscopy in an effort to determine the cause of plaintiff's continued pain. Plaintiff's shoulder movement was limited by pain, but not by any mechanical defect. In late November 1993, defendants retained Total Rehabilitation to provide plaintiff with vocational rehabilitation. The vocational rehabilitation consultant was aware that plaintiff was under the care of Drs. Somers, Finkel and Rogers.
12. On 25 February 1994, plaintiff's shoulder injury reached maximum medical improvement. Plaintiff has a ten percent permanent partial impairment of her arm as a result of her injury on 1 October 1990. Plaintiff's permanent impairment is due to pain, not to any orthopaedically treatable condition.
13. On 1 March 1994, Dr. Somers released plaintiff to return to light sedentary employment. Dr. Somers restricted plaintiff from lifting over chest height, pulling, pushing, climbing or reaching. Plaintiff was restricted from any activity involving repetitive shoulder motions. Plaintiff was physically capable of desk work. Dr. Somers related these restrictions to plaintiff and her rehabilitation consultant during a meeting on that date. The rehabilitation consultant did not attempt to meet with Drs. Finkel or Rogers.
14. On 8 March 1994, plaintiff began attending Job Club, an employment placement program. Plaintiff fully participated in the Job Club program. Plaintiff did not attempt to sabotage defendants' rehabilitation efforts. Plaintiff's only absences from the vocational rehabilitation program occurred when she began taking Methadone in April 1994 as prescribed by Dr. Finkel.
15. On 29 March 1994, plaintiff interviewed for and was offered a position as an appointment coordinator for a photography studio. Plaintiff did not accept the position. Plaintiff was physically capable of the appointment coordinator's duties.
16. As a result of her continued depression and psychological impairment, plaintiff was incapable of working as an appointment coordinator, or in any other employment on 29 March 1994. Plaintiff's depression and psychological impairment resulted from her injury on 1 October 1990. Plaintiff's refusal of the appointment coordinator position was justified.
17. Plaintiff will benefit from continued treatment by Dr. Rogers and Dr. Finkel. She will not benefit from additional orthopedic treatment.
18. As a result of her injury on 1 October 1990, plaintiff was incapable of earning wages from defendant-employer or any other employer from 5 June 1991 through the date of the hearing in this matter. Plaintiff's psychological impairment is not permanent.
19. Defendant-insurer terminated plaintiff's temporary total disability compensation without the approval of the Industrial Commission from 5 April 1994 through 3 May 1994. Defendant-insurer's wrongful termination of plaintiff's temporary total disability compensation was due to stubborn, unfounded litigiousness.
* * * * * * * * * * *
Based upon the finding of fact, the Full Commission concludes as follows:
CONCLUSIONS OF LAW
1. On 1 October 1990, plaintiff sustained an injury by accident arising out of and in the course of her employment with defendant-employer. N.C. Gen. Stat. § 97-2(6).
2. On 3 May 1994, the Industrial Commission improvidently allowed defendants to cease payment of temporary total disability compensation.
3. Defendant-insurer ceased payment of temporary total disability compensation without reasonable ground and without the Industrial Commission's approval from 5 April 1994 through 2 May 1994. N.C. Gen. Stat. § 97-88.1.
4. Plaintiff is entitled to receive temporary total disability compensation at the rate of $266.68 per week from 5 April 1994 and continuing until order of the Industrial Commission allowing defendants to cease payment of temporary total disability compensation. N.C. Gen. Stat. § 97-29.
5. Plaintiff is entitled to payment of all medical expenses incurred as a result of her injury on 1 October 1990 for so long as such examinations, evaluations and treatments tend to effect a cure, give relief or will tend to lessen her period of disability. N.C. Gen. Stat. § 97-2(19); N.C. Gen. Stat. § 97-25.
* * * * * * * * * * *
Based on the foregoing finding of fact and conclusions of law, the Full Commission affirms the holding of the Deputy Commissioner and enters the following:
AWARD
1. Defendants shall pay plaintiff temporary total disability compensation at the rate of $266.68 per week from 5 April 1994 and continuing until order of the Industrial Commission allowing defendants to cease payment of temporary total disability compensation. To the extent that this amount has accrued, it shall be paid in lump sum, subject to the attorney's fee approved for plaintiff's attorney in paragraph 4.
2. Defendants shall pay all medical expenses incurred by plaintiff as a result of her injury on 1 October 1990 for so long as such examinations, evaluations and treatments tend to effect a cure, give relief or will tend to lessen her period of disability.
3. Defendant-insurer shall pay plaintiff's attorney $800.00 for terminating plaintiff's temporary total disability compensation without reasonable ground and without the approval of the Industrial Commission. This amount shall be paid directly to plaintiff's attorney.
4. A reasonable attorney's fee of twenty-five percent of the compensation due plaintiff is approved for plaintiff's attorney and shall be paid as follows: twenty-five percent of the compensation due plaintiff after 4 July 1994 shall be deducted from that amount and paid directly to plaintiff's attorney. Thereafter, plaintiff's attorney shall receive every fourth compensation check.
5. Defendants shall pay the costs, including expert witness fees of $200.00 for Drs. Rogers and Conder.
FOR THE FULL COMMISSION
 S/ __________________ COY M. VANCE COMMISSIONER
CONCURRING:
S/ __________________ J. HOWARD BUNN CHAIRMAN
S/ __________________ THOMAS J. BOLCH COMMISSIONER
CMV/mj 9/19/96